# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH CORNETT, an individual, )<br>)<br> Plaintiff, )<br> vs. )<br>)<br>GAWKER MEDIA, LLC, a limited liability )<br>company, )<br>)<br> Defendant. )<br>_____ ) | Case No.: 2:13-cv-01579-GMN-CWH<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss for Lack of Jurisdiction (ECF No. 7) filed by Defendant Gawker Media, LLC ("Gawker"). Rather than file a Response to Gawker's Motion, Plaintiff Hannah Cornett ("Plaintiff") filed a Motion for Leave to File an Amended Complaint (ECF No. 24), which is also pending before the Court. Gawker filed a Response to Plaintiff's Motion (ECF No. 41) and Plaintiff filed a Reply (ECF No. 45). For the reasons discussed in this Order, the Motion to Dismiss filed by Defendant Gawker Media, LLC is DENIED-IN-PART and GRANTED-IN-PART. In addition, Plaintiff's Motion for Leave to File an Amended Complaint is DENIED with leave to file an Amended Complaint that cures the defects identified below.

## I.    BACKGROUND

This case arises from an article that appeared on Deadspin.com, a website that is owned and operated by Defendant Gawker. (Notice of Removal Ex. A ("Compl.") ¶¶ 2, 11, ECF No. 1.) Specifically, beginning on September 15, 2011, a series of articles appeared on Deadspin.com entitled "The Surfer Grifter: The Weird Tale of Hannah Cornett and Her $20K Vegas Hotel Bill." (*Id.* ¶ 2.) Plaintiff alleges that each of these articles "explicitly and/or implicitly" accused her of "committing criminal conduct as a 'grifter' by committing larceny"

and falsely claimed that she "fabricated her career as an athlete." (*Id.* ¶ 7.)

In response to these articles, on September 12, 2012, Plaintiff initially filed an action in the Superior Court of California, County of Los Angeles against Gawker.com Inc ("California Action"). (*See* Def's Resp. to Pl.'s Mot. to File Am. Compl., Ex. 1, ECF No. 41-2.) Subsequently, on May 29, 2013, that court issued an Order to Show Cause why the complaint should not be dismissed for failure to serve the defendants. (*Id.*) Thereafter, the California court ordered Plaintiff to serve defendants by July 19, 2013. (*Id.*) However, on July 19, 2013, Plaintiff filed a statement with the California court in which she indicated that she was voluntarily dismissing the California action "in order to proceed in Nevada where she can have the witnesses she needs." (*Id.*)

On August 1, 2013, Plaintiff initiated this action in Nevada state court against Gawker Media, LLC and A.J. Daulerio.[1] (Notice of Removal, Ex. A ("Compl."), ECF No. 1.) In her Complaint, Plaintiff asserts three causes of action: (1) Defamation; (2) False Light Invasion of Privacy; and (3) Negligent Interference with Prospective Economic Advantages. (Compl. ¶¶ 15–51, ECF No. 1.) Defendants timely removed the action to this Court, (Notice of Removal, ECF No. 1), and Gawker filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Mot. to Dismiss, ECF No. 7). Although Plaintiff failed to file an opposition to Defendant's Motion to Dismiss, Plaintiff did file a Motion for Leave to File an Amended Complaint. (ECF No. 24.)

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.    Legal Standard

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant

---

[1] Defendant A.J. Daulerio has since been dismissed from this action. (Notice of Voluntary Dismissal, ECF No. 64.)

raises the defense, the burden then falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  A plaintiff can carry this burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process secured by the United States Constitution. *Ziegler v. Indian River Country*, 64 F.3d 470, 473 (9th Cir. 1995).  Because Nevada's long-arm statute is co-extensive with the limits of due process, this analysis collapses into a single inquiry. Nev. Rev. Stat. § 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States").

Courts may exercise personal jurisdiction, consistent with the Constitution, only over those defendants that have "certain minimum contacts with [the state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A defendant can be subject to either general personal jurisdiction or specific personal jurisdiction in a given state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–415 (1984).  In this case, Plaintiff does not argue that Gawker's contacts with the state of Nevada meet the requirements of general personal jurisdiction.  Therefore, the Court determines only whether Gawker is subject to specific personal jurisdiction.

A court can exercise specific personal jurisdiction over a defendant when "the case arises out of certain forum-related contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  "'[S]pecific' jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the

claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Id.* (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Once the plaintiff satisfies these two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). At bottom, the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

## B. Discussion

For the reasons discussed below, the Court finds that the exercise of specific personal jurisdiction over Gawker for this action is proper. Accordingly, Gawker's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

### 1. *Purposeful Availment*

Where, as here, the dispute involves tort claims, courts in the Ninth Circuit inquire "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's action were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). To determine whether a defendant is subject to personal jurisdiction in a given forum under the "effects" test, the court must determine that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation marks omitted). Because

Gawker's act of publishing the subject article was inarguably an intentional act, the Court need only discuss the remaining two prongs of the effects test.

> ### a.    *Gawker's Express Aiming*

The Ninth Circuit has recognized that "tortious conduct on a nationally accessible website" is considered express aiming when the operation of that website is combined with "something more," which the court defined as "conduct directly targeting the forum." *Mavrix*, 647 F.3d at 1229.  The Ninth Circuit has previously found this "something more" where a "defendant individually targeted a plaintiff known to be a forum resident." *Id.* (internal quotation marks omitted).

In this case, it is unclear when Plaintiff became a Nevada resident.  In addition, even to the extent Plaintiff was a Nevada resident at the time, there is no indication that Gawker *knew* that Plaintiff was a resident of Nevada.  Nevertheless, Gawker published an article about events that occurred at a well-known establishment in Las Vegas, Nevada and that cast Plaintiff in a negative light.  In fact, Gawker even admits that its reporter made a "brief telephone call to a Nevada hotel." (Resp. 6:11–12, ECF No. 41.)  Thus, it appears that Gawker directly targeted Nevada by researching and publishing the article about events that occurred largely in Nevada. *See Core-Vent*, 11 F.3d at 1488 (finding personal jurisdiction in California because "California [was] the focal point . . . of the story").

> ### b.    *Harm Suffered in the Forum State*

Gawker also relies on its low readership in Nevada and on its belief that Plaintiff is a resident of California to argue that there was inadequate harm suffered in the forum state.  Contrary to Gawker's assertions, the Court finds that, under *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773 (1984), Gawker's allegedly libelous article caused sufficient harm in Nevada to provide a basis for personal jurisdiction.

In *Keeton*, which also involved a libel claim, the Supreme Court held that the assertion

of personal jurisdiction was proper in New Hampshire, even though neither party was a resident of New Hampshire and plaintiff "suffered such a small proportion of her total claimed injury within the State." 465 U.S. 770, 773 (1984); *see also Yahoo!*, 433 F.3d at 1207 ("[T]he 'brunt' of the harm need not be suffered in the forum state."). In determining that sufficient harm was suffered in New Hampshire, the Court expressly recognized that "[t]he tort of libel is generally held to occur wherever the offending material is circulated" and, as such, "[t]he reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous." *Keeton*, 465 U.S. at 777 (recognizing that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement.").

After *Keeton*, Gawker cannot defeat personal jurisdiction in Nevada merely by alleging that only a small proportion of injury occurred in Nevada. Gawker has readers in Nevada; the number of readers is largely inconsequential. *See Yahoo!*, 433 F.3d at 1207 ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."). Thus, the Court concludes that a jurisdictionally sufficient amount of the alleged harm occurred in Nevada and, accordingly, that Plaintiff has carried her burden of establishing that Gawker purposefully availed itself of Nevada. *See Keeton*, 465 U.S. at 777.

### 2. *This Action Arises out of Gawker's Forum-Related Activities*

The majority of Gawker's arguments in support of its Motion to Dismiss appear related to its asserted insufficient contacts with the state of Nevada. However, as discussed above, Defendant has had sufficient contact with Nevada through its websites and its investigation and publication of the article. Both Gawker's contacts with Nevada and Plaintiff's claims arise out of Gawker's decision to publish an article on its national website that reported on events that happened largely in Las Vegas, Nevada. Thus, Plaintiff has carried her burden of establishing that this action arises out of Gawker's forum-related activities.

### 3. *The Exercise of Jurisdiction is Reasonable*

Ninth Circuit precedent dictates that, because Plaintiff established the first two prongs of the specific personal jurisdiction inquiry, the burden now shifts to Gawker to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). Consequently, Gawker's assertion that Plaintiff must show the reasonableness of jurisdiction in Nevada is contrary to controlling law. *Compare* Resp. 14:20–15:2, ECF No. 41 ("Cornett has not and cannot demonstrate that . . . under such circumstances the exercise of jurisdiction in Nevada is reasonable") *with Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff succeeds in satisfying both of the first two prongs, *the burden then shifts to the defendant* to present a compelling case that the exercise of jurisdiction would *not be reasonable*." (emphasis added) (internal quotation marks omitted)).  Presumably based on this misunderstanding of controlling law, Gawker omitted any discussion of reasonableness from both its Motion, (ECF No. 7), and its Response in opposition to Plaintiff's Motion to Amend, (ECF No. 41).  Accordingly, Gawker has failed to carry its burden of presenting a compelling case that the exercise of jurisdiction is reasonable.

## III.  **DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Gawker also asserts that, even if the Court can properly assert personal jurisdiction over Gawker, Plaintiff cannot maintain this action because the applicable statute of limitations has expired.  Gawker also asserts that the Court should grant Gawker's Motion because Plaintiff failed to file points and authorities in opposition, as required by Local Rule 7-2(d).

### A.  **Plaintiff's Failure to Oppose Defendant's Motion to Dismiss**

Defendant first relies on Rule 7-2(d) of the Local Rules of Practice of the United States District Court for the District of Nevada, which provides that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting

of the motion." D. Nev. R. 7-2(d).  True enough, despite successfully requesting an extension of the Response deadline to October 21, 2013, (*see* Order on Stipulation, ECF No. 15), Plaintiff failed to file any Response to Defendant's Motion.  However, on the date of the Response deadline, Plaintiff did file a Motion for Leave to File an Amended Complaint. (ECF No. 24.) Accordingly, in the interest of justice, the Court declines to invoke Rule 7-2(d) and will construe Plaintiff's Motion to Amend as an opposition to Defendant's Motion to Dismiss.

### B.    Statute of Limitations

Neither party appears to dispute that, under the applicable statute of limitations in Nevada, Plaintiff's complaint was timely filed. *See* Nev. Rev. Stat. § 11.190(4)(c) (requiring that an action for libel or slander must be commenced within two years).  However, Defendant asserts that, pursuant to Nevada's "borrowing statute," the Court should apply California's one-year statute of limitations, rather than Nevada's two-year statute of limitations.  Defendant further asserts that, as a result, Plaintiff's Complaint in this action is untimely under California's one-year statute of limitations.

### 1.    *Nevada's "Borrowing Statute"*

Where, as here, federal subject matter jurisdiction is based on diversity, courts apply the law of the forum state to determine which state's statute of limitations to apply. *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); *see also Flowers v. Carville*, 310 F.3d 1118, 1123 (9th Cir. 2002).  After *Guaranty Trust*, in an attempt to quell forum shopping, many states enacted "borrowing statutes," which instruct courts when to apply foreign statutes of limitations. Specifically, Nevada's borrowing statute provides:

> When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

Nev. Rev. Stat. § 11.020.

Plaintiff correctly notes that the Ninth Circuit has already held that a plaintiff need only be a citizen of Nevada *at the time the complaint was filed*, to avoid the application of Nevada's borrowing statute. *Flowers*, 310 F.3d at 1123–25.  However, Plaintiff's original Complaint states that "Plaintiff HANNAH CORNETT . . . presently maintains a residence *in California*." (Compl. ¶ 10 (emphasis added).)  For this reason, based on her original Complaint, Nevada's borrowing statute would apply and would require the Court to apply the California statute of limitations.  Therefore, the Court must dismiss Plaintiff's original Complaint as untimely.  As pleaded, Plaintiff's original Complaint is barred by California's one-year state of limitations.

Plaintiff's Proposed Amended Complaint is also insufficient to avoid this outcome. Plaintiff's Proposed Amended Complaint alters paragraph 10 to state that Plaintiff "presently is a resident of Nevada." (Notice of Corrected Image/Document, Ex. A, ¶ 10, ECF No. 26-2.) However, under *Flowers*, to avoid the Nevada borrowing statute, Plaintiff must show that she was a resident of Nevada *at the time the complaint was filed*. 310 F.3d at 1125 ("Flowers held her cause of action from the time it accrued, and she was a citizen of Nevada when she filed her complaint. The exemption to Nevada's borrowing statute requires no more.").  Plaintiff's Proposed Amended Complaint indicates only that Plaintiff was a resident of Nevada on the date that she filed her proposed amendment, October 22, 2013.  Nothing in the Proposed Amended Complaint or the attached briefing provides a factual basis from which the Court can infer that Plaintiff was actually a Nevada citizen when she commenced this action.

### 2.    *Nevada's "Saving Statute"*

Plaintiff attempts to overcome Defendant's arguments by asserting that Nevada's "Saving Statute," Nev. Rev. Stat. 11.500, "saves" her Complaint.  The Court does not agree.

Section 11.500 of the Nevada Revised Statutes provides that:

1. Notwithstanding any other provision of law, and except as otherwise provided in this section, if an action that is commenced within the applicable period of limitations is *dismissed because the court lacked jurisdiction over the subject matter of the action*, the action may be recommenced in the court having

jurisdiction within:
    (a) The applicable period of limitations; or
    (b) Ninety days after the action is dismissed,
    whichever is later.

Nev. Rev. Stat. § 11.500(1) (emphasis added).  Thus, pursuant to section 11.500, Plaintiff's Complaint in this action was timely only if her previous, timely action was dismissed because the court in which she filed that previous action lacked subject matter jurisdiction.

Plaintiff argues that Nevada's Saving Statute applies because she voluntarily dismissed the California Action after she recognized that "California did not have subject matter jurisdiction due to the related case pending in Nevada, under California's abatement rule." (Reply 9:18–20, ECF No. 45.)  The Court doubts that Nevada's Saving Statute could be invoked to "save" a previous action that was *voluntarily* dismissed, even when a plaintiff later argues that the complaint in the first action was voluntarily dismissed based on the plaintiff's belief that the previous court lacked subject matter jurisdiction.  However, even assuming a court could possibly revive a previous action under these circumstances, Plaintiff's arguments fail in this case for at least two reasons.

First, the Court has reviewed the document that Plaintiff filed with the California court in which she notified the California court that she was voluntarily dismissing the California Action. (*See* Resp. 19, Ex. 1 at 10, ECF No. 41-2.)  However, nowhere in this "notice of voluntary dismissal" does she state that she based the dismissal on subject matter jurisdiction. (*See id.* ("Plaintiff has realized the witnesses that she needs for trial in this matter (the employees of the hotel) are all in Nevada, and [Plaintiff] is dismissing this action in order to proceed in Nevada where she can have the witnesses she needs in this case.").)

Second, Plaintiff has failed to provide any legal authority to support her assertion that "California's abatement rule" deprived the California court of subject matter jurisdiction over the California Action.  Even so, it appears that the California case law on abatement would

have supported, at best, a discretionary stay of the California Action. *See, e.g., Leadford v. Leadford*, 8 Cal. Rptr. 2d 9, 12 (Cal. Ct. App. 1992) ("[A]batement is required only where the multiple actions are pending in courts *of the same state*.  Where . . . the actions are pending in courts of different states, the determination whether to stay the later-filed action is *discretionary*, not mandatory . . . ." (emphasis added) (citations omitted)); *see also Simmons v. Superior Court in & for Los Angeles Cnty.*, 214 P.2d 844, 848 (Cal. Dist. Ct. App. 1950) ("While it is unquestionably the law that the pendency of a prior action in another state between the same parties, involving the same cause of action, does *not* entitle a party as a matter of right to an abatement of a second suit, we think it is equally true that it is within the discretion of the court in which the second action is pending to stay the same until after the decision of the first . . . ." (emphasis added) (quotation marks omitted)).   Thus, California's abatement rule did not deprive the California court of subject matter jurisdiction over the California Action. *See Leadford v. Leadford*, 8 Cal. Rptr. 2d at 12.

### 3.   *Conclusion*

For these reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 7) and **DENIES** Plaintiff's Motion to Amend (ECF No. 24).  However, because Plaintiff could conceivably add additional facts to plausibly establish that she was a citizen of Nevada at the time she filed her original Complaint, the Court cannot find that amendment would be futile. Therefore, the Court grants Plaintiff leave to file an amended complaint if she can cure this defect.  Plaintiff shall file her amended complaint within fourteen (14) days of the date of this Order.  Failure to file an amended complaint shall result in the Court dismissing Plaintiff's Complaint with prejudice.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED-IN-PART** and **DENIED-IN-PART.**  Plaintiff's Complaint is hereby dismissed

without prejudice.  Plaintiff shall file an Amended Complaint that cures the defects identified in this Order by **Monday, July 7, 2014**.  Failure to file an Amended Complaint by this date will result in dismissal of this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 24) is **DENIED.**

**DATED** this 23rd day of June, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge