# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HANNAH CORNETT, an individual,                    )
                                                  )
                     Plaintiff,                    )          Case No.: 2:13-cv-01579-GMN-CWH
          vs.                                     )
                                                  )                    **ORDER**
GAWKER MEDIA, LLC, a limited liability            )
company,                                          )
                                                  )
                     Defendant.                    )
_____ )

          Pending before the Court is the Motion to Dismiss (ECF No. 83) filed by Defendant

Gawker Media, LLC ("Gawker").  Additionally, before the Court is the Motion for Leave to File

Second Amended Complaint (ECF No. 93) filed by Plaintiff Hannah Cornett ("Plaintiff").  Both

motions are fully briefed.  For the reasons discussed below, Gawker's Motion to Dismiss is

**GRANTED**, and Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED**.

## I.      BACKGROUND

           This case arises from an article that appeared on Deadspin.com, a website that is owned

and operated by Gawker. (Notice of Removal Ex. A ("Compl.") ¶¶ 2, 11, ECF No. 1).

Specifically, beginning on September 15, 2011, a series of articles appeared on Deadspin.com

entitled "The Surfer Grifter: The Weird Tale of Hannah Cornett and Her $20K Vegas Hotel

Bill" (collectively, "the Articles"). (*Id.* ¶ 2).  Plaintiff alleges that each of these articles

"explicitly and/or implicitly" accused her of "committing criminal conduct as a 'grifter' by

committing larceny" and falsely claimed that she "fabricated her career as an athlete." (*Id.* ¶ 7).

          In response to these articles, on September 12, 2012, Plaintiff initially filed an action in

the Superior Court of California, County of Los Angeles against Gawker.com Inc ("California

Action"). (*See* Def's Resp. to Pl.'s Mot. to File Am. Compl., Ex. 1, ECF No. 41-2).

Subsequently, on May 29, 2013, that court issued an Order to Show Cause why the complaint should not be dismissed for failure to serve the defendants. (*Id.*)  Thereafter, the California court ordered Plaintiff to serve defendants by July 19, 2013. (*Id.*)  However, on July 19, 2013, Plaintiff filed a statement with the California court in which she indicated that she was voluntarily dismissing the California action "in order to proceed in Nevada where she can have the witnesses she needs." (*Id.*)

On August 1, 2013, Plaintiff initiated this action in Nevada state court against Gawker Media, LLC and A.J. Daulerio ("Daulerio").[1] (Notice of Removal, Ex. A ("Compl."), ECF No. 1).  In her Complaint, Plaintiff asserts three causes of action: (1) Defamation; (2) False Light Invasion of Privacy; and (3) Negligent Interference with Prospective Economic Advantages. (Compl. ¶¶ 15–51, ECF No. 1).  Defendants timely removed the action to this Court, (Notice of Removal, ECF No. 1), and Gawker filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Mot. to Dismiss, ECF No. 7).  Although Plaintiff failed to file an opposition to Defendant's Motion to Dismiss, Plaintiff did file a Motion for Leave to File an Amended Complaint. (ECF No. 24).

The Court held that Nevada's borrowing statute applied, requiring the Court to apply the California statute of limitations. (Order Mot. to Dismiss 9:5–8, ECF No. 70).  The Court dismissed Plaintiff's original Complaint as barred by California's one-year statute of limitations. (*Id.* 9:7–8).  However, the Court granted Plaintiff leave to file an amended complaint alleging that she was a Nevada citizen at the time she commenced this action. (*Id.* 11:15–22).  Plaintiff filed an Amended Complaint on July 7, 2014. (ECF No. 71).  Shortly thereafter, Gawker filed the instant Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 83).

/ / /

-----

[1] Defendant A.J. Daulerio has since been dismissed from this action. (Notice of Voluntary Dismissal, ECF No. 64).

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

Gawker asserts that Plaintiff's claims "should be dismissed because she was given leave to amend her original defective complaint for the limited purpose of pleading that she was a

citizen of Nevada at the time she filed her initial complaint [and] Plaintiff failed to do so."

(Def.'s Mot. to Dismiss 6:19–21, ECF No. 83).  However, Plaintiff asserts that Nevada's

borrowing statute does not apply to this action because the cause of action arose in Nevada.

(Pl.'s Response 15:22–23, ECF No. 92).  Moreover, Plaintiff asserts that, even if the Court finds

that the Nevada borrowing statute applies, Nevada's "Savings Statute" would make the filing of

this action timely. (*Id.* 18:21–22).  Furthermore, Plaintiff asserts that if the Court applies the

borrowing statute, the issue of Gawker's residence determines the relevant statute of limitations

period. (*Id.* 20:8–10).  The Court finds all of Plaintiff's arguments unavailing.

First, where federal subject matter jurisdiction is based on diversity, courts apply the law

of the forum state to determine which state's statute of limitations to apply. *Guaranty Trust Co.*

*v. York*, 326 U.S. 99, 110 (1945); *see also Flowers v. Carville*, 310 F.3d 1118, 1123 (9th Cir.

2002).  After *Guaranty Trust*, in an attempt to quell forum shopping, many states enacted

"borrowing statutes," which instruct courts when to apply foreign statutes of limitations.

Specifically, Nevada's borrowing statute provides:

> When a cause of action has arisen in another state, or in a foreign
> country, and by the laws thereof an action thereon cannot there be
> maintained against a person by reason of the lapse of time, an action
> thereon shall not be maintained against the person in this State,
> except in favor of a citizen thereof who has held the cause of action
> from the time it accrued.

Nev. Rev. Stat. § 11.020.

To determine the applicability of Nevada's borrowing statute, the Court must determine

where Plaintiff's causes of action arose.  Although the Nevada Supreme Court has not addressed

where tort actions arise for purposes of the Nevada borrowing statute, the Court will look to

California law for guidance. *See Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145

(9th Cir. 2004).  The language of California's borrowing statute nearly mirrors the language of

Nevada's borrowing statute. *See* Cal. Code of Civ. Proc. § 361.  Under California's borrowing

statute, to determine where a tort action arose, "a court must look to 'the time when, and the place where, the act is unlawfully committed or omitted.'" *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1185 (S.D. Cal. 2007) (quoting *Vestal v. Shiley*, 1997 WL 910373, *2 (C.D. Cal. Nov. 17, 1997)).

The Court finds that Plaintiff's causes of action arose in New York because both Gawker and the author of the Articles, A.J. Daulerio, are "located in New York." (*See* Notice of Removal Ex. A ("Compl.") ¶ 12; Pl.'s First Amended Compl. ¶ 11, ECF No. 71). In Plaintiff's original Complaint, Plaintiff alleged that Daulerio is "located in New York" and Gawker is "based in New York.' (Notice of Removal Ex. A ¶¶ 11–12). Moreover, although Daulerio is no longer a party to this action, Plaintiff maintains that Gawker is based in New York. (Pl.'s First Amended Compl. ¶ 11). Because Plaintiff alleges that, "[t]hrough its publication, Deadspin.com, Gawker facilitated a series of fraudulent articles written by Gawker's editor-in-chief, [] A.J. Daulerio, in an attempt to wreak havoc on [Plaintiff's] personal and professional life," it is reasonable to assume that these acts occurred in New York, where both Gawker and Daulerio are located. Accordingly, because the acts underlying Plaintiff's action arose in New York, the Court finds that Nevada's borrowing statute applies. As pleaded, Plaintiff's First Amended Complaint is barred by New York's one-year statute of limitations. *See* N.Y. Civil Practice Law § 215 (McKinney 2006).[2]

Alternatively, if the Court were to find that the causes of action arose where the injury occurred, Nevada's borrowing statute would still apply. *See Knight v. Climbing Magazine*, 2012 WL 6627821, *2 (D. Nev. Dec. 18, 2012) (holding that, under the Nevada borrowing statute, the

---

[2] New York does not recognize the cause of action of false light invasion of privacy. *Howell v. New York Post Co., Inc.*, 612 N.E.2d 699, 354 (N.Y. 1993). Moreover, Plaintiff's claim of negligent interference of prospective economic advantage is subject to the one-year limitation period because "Plaintiff may not circumvent the one-year limitation period applicable to defamation actions by misdescribing the tort as injurious falsehood or interference with economic relations." *Noel v. Interboro Mut. Indem. Ins. Co.*, 295 N.Y.S.2d 399, 400 (N.Y. Sup. Ct. 1968).

claims of defamation and false light arose occurred where the plaintiff resided). Under this approach, the causes of action would have arisen where Plaintiff resided at the time of the alleged conduct because "the essence of defamation is injury to the reputation of the plaintiff in his home where he is known." *McGuire v. Brightman*, 145 Cal. Rptr. 256, 262 (1978). In this case, Plaintiff resided in California at the time the Articles were published. (*See* Compl. ¶10). Accordingly, under this approach, Plaintiff's causes of action arose in California and Nevada's borrowing statute applies.

Likewise, if the Court followed the approach used in other states, applying the forum state's choice-of-law principles surrounding substantive choice-of-law determinations in order to determine where a cause of action arose, Nevada's borrowing statute would still apply. *See Dymond v. Nat'l Broad. Co.*, 559 F. Supp. 734, 737 (D. Del. 1983) ("Consequently, and solely for the purposes of [Delaware's borrowing statute], the Court determines that it will use that body of case law surrounding substantive choice of law determinations in order to determine where the "cause of action' arises in a multistate defamation case."). Under Nevada choice-of-law principles, Section 145 of the Restatement (Second) of Conflict of Laws governs the choice-of-law issues in tort actions "unless another, more specific section of the Second Restatement applies to the particular tort." *General Motors Corp. v. Eighth Judicial Dist. Court of State of Nev.*, 134 P.3d 111, 116 (Nev. 2006). Section 150 of the Second Restatement applies to multistate defamation and provides that when, as here, "a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of Conflict of Laws § 150(2) (1971). As discussed above, Plaintiff resided in California at the time the Articles were published. Accordingly, under this approach, Plaintiff's causes of action arose in California and Nevada's borrowing statute applies.

Second, Plaintiff asserts that, even if the Court finds that the Nevada borrowing statute applies, Nevada's "Savings Statute" would make the filing of this action timely. However, the Court has already addressed Plaintiff's arguments on this issue at length and therefore, the Court will not waste time revisiting arguments that have already been litigated. (*See* Order Mot. to Dismiss 9:20–11:13).

Third, Plaintiff asserts that if the Court applies Nevada's borrowing statute, the issue of Gawker's residence determines the relevant statute of limitations period. To support this assertion, Plaintiff cites a Ninth Circuit case and two Nevada Supreme Court cases. *See Alberding v. Brunzell*, 601 F.2d 474 (9th Cir. 1979); *Wing v. Wiltsee*, 223 P. 334 (Nev. 1924); *Lewis v. Hyams*, 63 P. 126 (Nev. 1900). These cases, however, only hold "that *the cause of action on an obligation* accrues in the place where the defendant resided when the obligation came due." *Alberding*, 601 F.2d at 477 (emphasis added). Therefore, the Court finds these cases inapposite to the issue of where a tort action arises under the Nevada borrowing statute.

To avoid application of Nevada's borrowing statute, Plaintiff need only be a citizen of Nevada at the time her original Complaint was filed. *Flowers*, 310 F.3d at 1123–25. Because the Court finds that Nevada's borrowing statute applies and Plaintiff's First Amended Complaint does not allege that she was a citizen of Nevada at the time she filed her original Complaint, Plaintiff's First Amended Complaint is barred by either New York or California's one-year statute of limitations, and the Court must dismiss Plaintiff's Amended Complaint as untimely. Moreover, nothing in Plaintiff's Proposed Second Amended Complaint or the attached briefing provides a factual basis from which the Court can infer that Plaintiff was actually a Nevada citizen when she commenced this action.

Finally, because the Court has already given Plaintiff the opportunity to amend her original Complaint to add additional facts to plausibly establish that she was a citizen of Nevada at the time she filed her original Complaint and Plaintiff has failed to cure this noted deficiency

in both the First Amended Complaint and the Proposed Second Amended Complaint, the Court finds that further amendment would be futile.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 83) is **GRANTED**.  Plaintiff's Amended Complaint is hereby dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Leave to File Second Amended Complaint (ECF No. 93) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Supplemental Reply (ECF No. 98) is **DENIED as moot**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 19th day of December, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge